MERYL L. YOUNG, SBN 110156
  myoung@gibsondunn.com
COLIN B. DAVIS, SBN 273942
  cdavis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

PAUL J. COLLINS, SBN 187709
  pcollins@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:   650.849.5333

Attorneys for Defendants KEVIN C. DALY,
MANOUCHEHR MOSHAYEDI, MEHRDAD
MOSHAYEDI, RAJAT BAHRI, F. MICHAEL
BALL, MATTHEW WITTE, CHRISTOPHER
COLPITTS, and sTEC, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM A .SOKOLOWSKI, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>WESTERN DIGITAL CORPORATION, LODI VENTURES, INC., KEVIN C. DALY, MANOUCHEHR MOSHAYEDI, MEHRDAD MOSHAYEDI, RAJAT BAHRI, F. MICHAEL BALL, MATTHEW WITTE, CHRISTOPHER COLPITTS, and sTEC, INC.,<br><br>     Defendants. | CASE NO. 13-cv-01277-JVS-AN<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS KEVIN C. DALY, MANOUCHEHR MOSHAYEDI, MEHRDAD MOSHAYEDI, RAJAT BAHRI, F. MICHAEL BALL, MATTHEW WITTE, CHRISTOPHER COLPITTS, AND sTEC, INC. TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing:**<br><br>Date:  January 6, 2014<br>Time:  1:30 p.m.<br>Place:  Courtroom 10C<br>Judge:  Hon. James V. Selna |

Gibson, Dunn &
Crutcher LLP

1

**TO THIS COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Please take notice that on January 6, 2014, at 1:30 p.m., in Courtroom 10C of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, California 92701-4516, or as soon thereafter as may be heard, defendants Kevin C. Daly, Manouchehr Moshayedi, Mehrdad Moshayedi, Rajat Bahri, F. Michael Ball, Matthew Witte, Christopher Colpitts, and sTec, Inc. (the "sTec Defendants") will, and hereby do, move this Court for an order under Federal Rule of Civil Procedure 12(b)(6) dismissing all of the claims and causes of action contained in the Complaint filed in this action by Plaintiff William A. Sokolowski ("Plaintiff").

Specifically, Plaintiff's breach of fiduciary duty claim should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff's exclusive remedy for the breach he alleges is to seek an appraisal of the value of his sTec, Inc. stock pursuant to Section 1300, *et seq.,* of the California Corporations Code. Plaintiff's breach of fiduciary duty claim also fails because it is properly a claim belonging to sTec, not sTec's individual shareholders, and therefore Plaintiff lacks standing to bring this claim as a matter of law.  Finally, Plaintiff's breach of fiduciary duty claim must be dismissed because Plaintiff's allegations are insufficient to rebut the presumption to which the moving defendants are entitled under California law under the business judgment rule, *i.e.,* that the defendants acted with due care, in good faith, and in the honest belief that their actions were in sTec's and the shareholders' best interests.

The sTec Defendants make this Motion following the telephonic conference of counsel pursuant to L.R. 7-3, which took place on October 29 and 30, 2013.  Despite their good faith efforts, the parties were unable to resolve the issues presented in this Motion.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice

Gibson, Dunn &
Crutcher LLP

1

1 | and Declaration of Colin B. Davis, all cited authorities, all pleadings and papers on file

2 | in this action, and such oral argument and other evidence and/or arguments as the

3 | Court shall consider prior to or at the time of the hearing on this Motion.

4 | Dated:  November 5, 2013

MERYL L. YOUNG
PAUL J. COLLINS
COLIN B. DAVIS
GIBSON, DUNN & CRUTCHER LLP


By:  /s/ Meryl L. Young
                    Meryl L. Young

Attorneys for Defendants KEVIN C. DALY,
MANOUCHEHR MOSHAYEDI, MEHRDAD
MOSHAYEDI, RAJAT BAHRI, F. MICHAEL
BALL, MATTHEW WITTE, CHRISTOPHER
COLPITTS, and sTEC, INC.

Gibson, Dunn &
Crutcher LLP

1

# **TABLE OF CONTENTS**

2

Page

3

I.    INTRODUCTION ................................................................................. 1

4

II.   BACKGROUND ................................................................................... 3

5

III.  ARGUMENT ........................................................................................ 7

6

A.    Legal Standard ......................................................................... 7

7
8

B.    Plaintiff's Exclusive Remedy For Breach Of Fiduciary Duty In Connection With A Merger Is Through An Appraisal Proceeding. .......... 7

9
10

C.    Plaintiff's Breach Of Fiduciary Duty Claim Is Derivative, Not Direct, And Plaintiff Has No Standing To Maintain A Shareholder Derivative Claim. ................................................................... 10

11
12

D.    Plaintiff Does Not Plead Facts Sufficient To Overcome The Presumption Of The Business Judgment Rule That The Director Defendants Acted In Good Faith And With Due Care. ...................... 12

13

1.    The Business Judgment Rule Protects Defendants' Decision To Approve The Merger. ........................................... 12

14
15

2.    The "Deal Protection Measures" Are All Well-Accepted Under California Law. ................................................. 16

16

E.    Plaintiff Fails To Satisfy The Heavy Burden Of Pleading A Materially False Or Misleading Proxy Statement..................................... 18

17
18

1.    The Proxy Statement Fully Disclosed The Claims Previously Asserted Derivatively On Behalf Of sTec And By The SEC........ 19

19

2.    The Proxy Statement Fully Disclosed The Interests Of sTec's Executive Officers And Directors In The Merger. ...................... 21

20
21

3.    Plaintiff's Quibbles With BAML's Valuation Methodologies Cannot Give Rise To A Disclosure Claim.................................... 22

22

4.    There Was No Duty To Disclose Potential "Strategic Alternatives," But The Proxy Statement Did Disclose Them. ...... 24

23

IV.  CONCLUSION .................................................................................. 25

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

i

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
   556 U.S. 662, 678, 129 S. Ct. 1927, 173 L. Ed. 2d 868 (2009) ............................... 7

*Avikian v. WTC Fin. Corp.,*
   98 Cal. App. 4th 1108 (2002) ................................................................................... 11

*Barnes v. State Farm Mut. Auto Ins. Co.,*
   16 Cal. App. 4th 365 (1993) ...................................................................................... 15

*Barth v. NovaSensor,*
   No. C-91-0830, 1991 WL 330922 (N.D. Cal. Dec. 6, 1991) .............................. 9, 10

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................................ 7

*Berg & Berg Enterprises, LLC v. Boyle,*
   178 Cal. App. 4th 1020 (2009) .................................................................................. 13

*Burt v. Irvine Co.,*
   237 Cal. App. 2d 828 (1965) ..................................................................................... 15

*Cinerama, Inc. v. Technicolor,*
   663 A.2d 1156 (Del. 1995) ........................................................................................ 16

*Dixon v. Cost Plus,*
   No. 12-cv-02721, 2012 U.S. Dist. LEXIS 90854 (N.D. Cal. June 27, 2012) ........... 9

*Eldridge v. Tymshare, Inc.,*
   186 Cal. App. 3d 767 (1986) ..................................................................................... 13

*Globis Partners, L.P. v. Plumtre Software, Inc.,*
   No. 1577-VCP, 2007 WL 4292024 (Del. Ch. Nov. 20, 2007) ................................. 21

*Grosset v. Wenaas,*
   42 Cal. 4th 1100 (2008) ...................................................................................... 10, 12

*In re 3Com S'holders Litig.,*
   No. 5067-CC, 2009 WL 5173804 (Del. Ch. Dec. 18, 2009) ........................ 16, 17, 23

*In re Answers Corp. S'holders Litig.,*
   No. 6170-VCN, 2011 WL 1366780 (Del. Ch. Apr. 11, 2011) .................................. 19

*In re Atheros Comm's, Inc.,*
   No. 6124-VCN, 2011 WL 864928 (Del. Ch. Mar. 4, 2011) ..................................... 23

*In re Best Lock Corp. S'holder Litig.,*
   845 A.2d 1057 (Del. Ch. 2001) ................................................................................. 23

*In re Delphi Fin. Group S'holder Litig.,*
   No. 7144-VCG, 2012 WL 729232 (Del. Ch. Mar. 6, 2012) ..................................... 19

Gibson, Dunn &
Crutcher LLP

*In re Dollar Thrifty S'holder Litig.,*
   14 A.3d 573 (Del. Ch. 2010) .................................................................... 16, 17

*In re Micromet, Inc. S'holders Litig.,*
   No. 7197-VCP, 2012 Del. Ch. LEXIS 41 (Del. Ch. Feb. 29, 2012) ...................... 19

*In re Staples, Inc. S'holders Litig.,*
   792 A.2d 934 (Del. Ch. 2001) ......................................................................... 21

*In re Synthes, Inc. S'holder Litig.,*
   50 A.3d 1022 (Del. Ch. 1994) .......................................................... 12, 13, 17, 18

*Jones v. H.F. Ahmanson & Co.,*
   1 Cal. 3d 93 (1969) ......................................................................................... 11

*Katz v. Chevron Corp.,*
   22 Cal. App. 4th 1352 (1994) ........................................................................... 12

*Lee v. Interinsurance Exchange of the Automobile Club of So. Cal.,*
   50 Cal. App. 4th 694 (1996) ............................................................................. 12

*Nelson v. Anderson,*
   72 Cal. App. 4th 111 (1999) ............................................................................. 11

*Pan Pac. Retail Props., Inc. v. Gulf Ins. Co.,*
   471 F.3d 961 (9th Cir. 2006) ............................................................................ 11

*Panjwani v. Blue Lane Technologies, Inc.,*
   No. 109-CV-138285 (Santa Clara Co. Superior Ct. 2010) ..................................... 9

*Pareto v. F.D.I.C.,*
   139 F.3d 696 (9th Cir. 1998) ............................................................................ 11

*Parnes v. Bally Entertainment Corp.,*
   722 A.2d 1243 (Del. 1999) ............................................................................... 13

*Schuster v. Gardner,*
   127 Cal. App. 4th 305 (2005) ........................................................................... 10

*Singhania v. Uttarwar,*
   136 Cal. App. 4th 416 (2006) ............................................................................. 9

*Sokolowski v. Moshayedi, et al.,*
   No. 12-cv-1862-JVS-MLG (C.D. Cal., filed October 25, 2012) ........................... 15

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) ............................................................................ 7

*Steinberg v. Amplica, Inc.,*
   42 Cal. 3d 1198 (1986) ...................................................................................... 8

*Sturgeon Petroleums, Ltd. v. Merchants Petroleum Co.,*
   147 Cal. App. 3d 134 (1983) ............................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) .......................................................................................... 3

1

## Statutes

2   Cal. Corp. Code § 1300 ................................................................. 8

3   Cal. Corp. Code § 1312 .......................................................... 8, 9, 10

4

## Rules

5   Fed. R. Civ. P. 12(b)(6) ................................................................. 7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORIES

Defendants Kevin C. Daly, Manouchehr Moshayedi, Mehrdad ("Mark") Moshayedi, Rajat Bahri, F. Michael Ball, Matthew Witte, Christopher Colpitts, and sTec, Inc. (the "sTec Defendants") respectfully submit this Memorandum of Points and Authorities in support of their Motion to Dismiss Plaintiff William A. Sokolowski's Complaint for Breach of Fiduciary Duty (the "Complaint").

## I.    INTRODUCTION

This action was filed after sTec, Inc. ("sTec") and Western Digital Corporation ("WDC") announced on June 24, 2013 that WDC had agreed to purchase all of sTec's common stock for $6.85 per share in cash.  WDC's $6.85 per share offer represented a **91% premium** over the closing market price of sTec's stock on June 21, 2013, the last trading day before the announcement.  Not surprisingly, on September 12, 2013, the transaction was overwhelmingly approved by a vote of 98.5% shares in favor to just 1.3% against.

Despite the huge premium and the overwhelming support for the transaction among sTec's shareholders, Plaintiff alleges that sTec's directors breached their fiduciary duties to sTec by engaging in an unfair process that resulted in a sale at an unfair price, and then publishing allegedly false or misleading proxy disclosures to obtain a favorable shareholder vote.  Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed for the following reasons:

First, Plaintiff's breach of fiduciary duty claim is barred by California's appraisal statute, which provides shareholders in certain types of corporate transactions, such as the merger in this case, a right to dissent and seek an independent appraisal of the fair market value of their stock in lieu of the consideration offered. The California Supreme Court has made clear that this statute makes appraisal the **exclusive remedy** available to shareholders with dissenting rights.  As California courts have noted, the purpose of the appraisal statute is to enable the majority of a company's shareholders to effect a merger while granting any shareholders like

1    Plaintiff who disagree with the merger the right to receive fair market value in cash for

2    their shares.  Plaintiff in this case, like all of sTec's other shareholders, knew before

3    the merger was consummated that a statutory appraisal would be available in the event

4    he was unhappy with the $6.85 per share transaction price because sTec's 86-page

5    Definitive Proxy Statement ("Proxy") expressly said so.  Nonetheless, Plaintiff

6    deliberately elected not to pursue an appraisal, despite his long-standing shareholder

7    derivative litigation based on most of the same allegations as the Complaint in this

8    case.  Having chosen not to pursue the *exclusive remedy* available under California

9    law, Plaintiff is not now entitled to pursue a claim for damages.

10        Second, to the extent Plaintiff can bring any claim other than one for appraisal, it

11   would be a derivative claim.  Direct and derivative claims are mutually exclusive.  In

12   this case, any claim would be derivative because the alleged injury — that sTec

13   shareholders received an unfair price for their stock — fell on all shareholders alike.

14   But any such derivative claim must be dismissed because Plaintiff lacks standing to

15   bring or maintain a derivative action on behalf of sTec.

16        Finally, even if Plaintiff were able to assert a direct claim for breach of fiduciary

17   duty against sTec's former directors, California's business judgment rule protects the

18   directors' decision to enter into the merger agreement.  Plaintiff has not remotely

19   pleaded facts sufficient to overcome the powerful presumption that sTec's directors

20   acted with due care, in good faith, and in the honest belief that their actions were in the

21   shareholders' best interests.  Plaintiff's principal argument is that the merger was

22   "engineered" by Manouchehr and Mark Moshayedi as a means of eliminating their

23   purported liability to sTec attributable to shareholder derivative claims that Plaintiff is

24   pursuing through a separate action before this Court.  However, Plaintiff's argument

25   ignores the fact that sTec's board delegated responsibility for analyzing sTec's

26   strategic options, retaining independent experts, and negotiating any potential

27   transaction to a special committee of outside directors (*i.e.,* excluding the Moshayedis).

28   Plaintiff pleads no reasonable basis to conclude that the members of the Special

Gibson, Dunn &
Crutcher LLP

1   Committee did not act in the best interests of sTec and its shareholders, nor any

2   reasonable basis to conclude that they are not entitled to the protection of the business

3   judgment rule.  For these reasons, and for the reasons set forth in detail below, the sTec

4   Defendants respectfully request that the Court dismiss Plaintiff's Complaint for failure

5   to state a claim upon which relief can be granted.

6   **II.    BACKGROUND**[1]

7   sTec is a California corporation that designs and manufactures enterprise class

8   solid state computer hard drives.  Complaint ¶ 24.  sTec's  solid state drives ("SSD")

9   were designed specifically for systems and applications that require high input and

10   output capabilities with low latencies for fast access to user data.  *Id.*

11   On June 24, 2013, sTec announced that it had entered into an Agreement and

12   Plan of Merger with defendants WDC and its wholly-owned subsidiary, Lodi

13   Ventures, Inc., pursuant to which WDC would acquire sTec for $6.85 per share in

14   cash.  *Id.,* ¶ 278.  The transaction represented a substantial ***91% premium*** to the

15   closing price of sTec's stock on June 21, the last full trading day before the proposed

16   transaction was approved by sTec's board of directors.  *See* Request to Take Judicial

17   Notice ("RJN"), Ex. A.  On September 12, 2013, the transaction was approved by

18   sTec's shareholders by a vote of 31.44 million shares (98.5%) in favor of the

19   transaction to 399,388 against (1.3%).  RJN*,* Ex. B.

20   The merger capped an 18-month process in which sTec's board initiated a new

21   business strategy intended to broaden demand for the Company's products by focusing

22   for the first time on hardware end-users in addition to its traditional OEM customer

23   base and, when that didn't bring the Company back to profitability, adopted a plan to

24   significantly reduce expenses and align the Company's cost structure with its revenues.

---

[1]   The facts set forth herein are derived from the Complaint, documents relied upon
but not attached to the Complaint, and other judicially noticeable sources — all of
which may be considered by this Court in addressing defendants' motion to
dismiss.  *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322,
127 S. Ct. 2499, 2509, 168 L.Ed.2d 179 (2007).

Gibson, Dunn &
Crutcher LLP

3

1    Complaint ¶ 262; RJN, Ex. C at 24.

2         On February 13, 2013, sTec's board formed a special committee (the "Special

3    Committee") to review the Company's strategic alternatives, including a potential sale.

4    Complaint ¶ 310(c); RJN, Ex. C at 25.  The Special Committee initially consisted of

5    defendants Daly, Colpitts, and Witte, all of whom were non-management independent

6    directors.  Complaint ¶ 277; *see also id.,* ¶¶ 25(d), (f); RJN, Ex. C at 25.  On March

7    26, 2013, defendant Bahri, also an independent director, was appointed to the Special

8    Committee.  RJN, Ex. C at 25.  Plaintiff concedes that none of these directors was a

9    member of sTec's management team, but nevertheless alleges that each was, in some

10   unspecified way, "beholden to the Moshayedis and acted as their *de facto* agents."

11   Complaint ¶¶ 25(d), (f).  As stated in sTec's Proxy, the broad mandate of the Special

12   Committee was to:

13            (1) review, investigate and evaluate strategic alternatives, including a
              possible sale of the company, as well as the alternative of continuing as a
14            standalone company with likely restructuring and/or further reductions in
              . . . workforce and other cost reduction initiatives; (2) negotiate the terms
15            and conditions of any strategic alternative identified by the special
              committee . . .; (3) retain an independent financial advisor, and any other
16            advisors that the special committee deem[ed] necessary or appropriate . . .;
              [and] (4) make . . . reports and recommendations to the entire board . . .;
17            and (5) exercise any other power or authority . . . that the special
              committee may determine is necessary or advisable to carry out and fulfill
18            its duties and responsibilities.
19
20   RJN, Ex. D at 5.

21        From February through May 2013, the Special Committee repeatedly met

22   independently and, at times, with other independent directors or the board as a whole

23   to review sTec's strategic alternatives.  RJN, Ex. C at 25-32.  As a result of those

24   discussions, on March 26 the board, at the recommendation of the Special Committee,

25   engaged BofA Merrill Lynch ("BAML") to serve as the Special Committee's financial

26   advisor.  Complaint ¶ 267; RJN, Ex. C at 27.  On April 1, 2013, at the direction of the

27   Special Committee, BAML began contacting potential acquirors.  RJN, Ex. C at 27.  In

28   total, BAML had discussions with 18 prospective acquirors, only three of which

expressed an interest to purchase sTec as a whole and six others expressed interest in purchasing only portions of sTec's business. *Id.*

By May 29, 2013, the Special Committee was engaged with only two bidders. *Id.* In response to the Special Committee's request for "best and final" offers from the two remaining bidders, on May 30, 2013, WDC submitted a bid to acquire sTec for $9.15 per share. Complaint ¶ 268; RJN, Ex. C at 31. On May 31, however, WDC withdrew its offer, indicating that it was reevaluating its interest and discontinuing its due diligence efforts. RJN, Ex. C at 31. On June 5, 2013, the other potential bidder also indicated that it was "disengaging from the process." *Id.* at 32.

On June 14, 2013, WDC made a firm proposal to purchase sTec at $6.85 per share. *Id.* After evaluating the proposal with BAML and the board's legal advisors, as well as the available strategic alternatives, the Special Committee elected to proceed with WDC. *Id.* at 32-33. After further negotiations and evaluation of the financial terms of the proposed transaction with BAML, on June 23, 2013, the Special Committee voted to approve and adopt the merger agreement. Complaint ¶ 269; RJN, Ex. C at 34. sTec publicly announced the proposed transaction on June 24, 2013. Complaint ¶ 269. The market price of sTec's stock immediately shot up from $3.59 per share at the close of the market on Friday, June 21, 2013 to $6.73 per share when the market opened on Monday, June 24, 2013. RJN, Ex. A.

As has become all too common, just two days after the Company announced the merger, plaintiffs' lawyers began filing boilerplate "unfair price" and "unfair process" complaints challenging the merger. Seven such complaints were filed between June 24 and July 11, 2013 in the Orange County Superior Court. RJN, Ex. C at 61. In each case, the plaintiffs alleged that the members of sTec's board of directors breached their fiduciary duties by causing sTec to enter into the merger following an inadequate sale process that resulted in an inadequate sale price. *Id.* Two of the complaints were later amended to add allegations that sTec's directors breached their fiduciary duty of

candor by causing sTec to publish proxy materials that allegedly contained material misrepresentations and omissions. *Id.*

On August 19, 2013, Plaintiff filed his Complaint in this action. Like the others, Plaintiff alleges "procedural flaws" in the sale process that resulted in a merger agreement that Plaintiff contends to be "unfair to [sTec]'s shareholders." Complaint ¶¶ 264-96. Plaintiff also alleges that the merger was "engineered" by defendants Manouchehr and Mark Moshayedi "to extinguish the valuable claims belonging to [sTec]" that Plaintiff asserted derivatively in a separate action pending in this Court. *Id.,* ¶ 1. Indeed, Plaintiff devotes the vast bulk of his 98-page Complaint to repeating (from other cases filed in this Court) allegations of "insider trading on a massive scale" that allegedly occurred from 2008 through 2010 "as part of a fraudulent scheme perpetrated by Defendants Manouchehr and Mark [Moshayedi] on behalf of themselves, their brother Mike and the Moshayedi family trusts." *Id.,* ¶ 2 & n.2; *see also id.,* ¶¶ 1-20, 32-259. Plaintiff contends that sTec's breach of fiduciary duty, corporate waste, unjust enrichment, and California Corporations Code claims arising from the alleged "scheme" were "the most valuable assets held by [sTec]" at the time of the sale. *Id.,* ¶ 3.

Although Plaintiff concedes that a majority of sTec's board of directors were non-management outside directors, Plaintiff nevertheless contends that each of the outside directors was "dominated by" and/or "beholden to" the Moshayedis (*id.,* ¶¶ 25(d), (f)) — without ever explaining exactly how or why. Plaintiff then alleges that each of the outside directors breached their fiduciary duties by (1) acquiescing in the sale of sTec for the benefit of the Moshayedis (*id.,* ¶ 263); (2) failing to consider the value of the Company's claims against the Moshayedis when assessing the value of sTec and negotiating the sale terms with WDC (*id.,* ¶¶ 1, 279); (3) acquiescing in "side agreements" between the Moshayedis and WDC that unfairly benefited the Moshayedis at the expense of other sTec shareholders (*id.,* ¶¶ 272-76, 280, 294-96); (4) agreeing to terms as part of the merger agreement that were, according to Plaintiff,

intended to prevent a topping bid (*id.,* ¶¶ 266, 282-93); and (5) publishing materially false or misleading proxy disclosures to secure a favorable shareholder vote on the merger (*id.,* ¶¶ 298-311).  For the reasons discussed below, none of these allegations is sufficient to state a claim upon which relief can be granted.

## III.   ARGUMENT

### A.   Legal Standard

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Although the Court accepts factual allegations as true for purposes of a motion to dismiss, this tenet is "inapplicable to legal conclusions."  *Id.*  After stripping away the "conclusory statements" in the complaint, the remaining allegations must do more than "create[] a suspicion of a legally cognizable right of action"; they must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal quotations omitted).  In making this "context-specific" determination, the Court may "draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  This analysis provides a critical gatekeeping function, because claims must be sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B.   Plaintiff's Exclusive Remedy For Breach Of Fiduciary Duty In Connection With A Merger Is Through An Appraisal Proceeding.

Plaintiff's action is barred because, under Chapter 13 of the California General Corporation Law, appraisal is the exclusive remedy available to him.  Chapter 13, Corp. Code §§ 1300, *et seq.*, articulates a clear procedure for appraisal of a shareholder's shares in lieu of the consideration available in a sale transaction.  Section 1300(a) provides that "each shareholder of the corporation entitled to vote on the transaction . . .

Gibson, Dunn &
Crutcher LLP

1   may, by complying with this chapter, require the corporation in which the shareholder

2   holds shares to purchase for cash at their fair market value the shares owned by the

3   shareholder which are dissenting shares[.]"  Section 1312(a) further states:

4          No shareholder of a corporation who has a right under this chapter to
           demand payment of cash for the shares held by the shareholder shall have
5          any right at law or in equity to attack the validity of the reorganization or
           short-form merger, or to have the reorganization or short-form merger set
6          aside or rescinded, except in an action to test whether the number of
           shares required to authorize or approve the reorganization have been
7          legally voted in favor thereof[.]

8

9          California courts have made clear that this chapter makes appraisal the exclusive

10  remedy available to shareholders with dissenting rights, and thus precludes any action

11  for damages or rescission.  In *Sturgeon Petroleums, Ltd. v. Merchants Petroleum Co.,*

12  147 Cal. App. 3d 134, 136-37, 195 Cal. Rptr. 29, 30-31 (1983), the Court of Appeal

13  held that appraisal was the exclusive remedy when plaintiffs brought both an appraisal

14  action and a damages action after a merger was approved by shareholders. Thus, the

15  court rejected the plaintiffs' argument that they could also maintain a damages claim

16  alleging breach of fiduciary duty, fraud, conspiracy, and violation of the California

17  Corporate Securities Law.  *Id.* at 137, 139.

18         Likewise, in *Steinberg v. Amplica, Inc.,* 42 Cal. 3d 1198, 1203-04, 233 Cal.

19  Rptr. 249, 251-252 (1986), the California Supreme Court affirmed the Court of

20  Appeal's reasoning in *Sturgeon* and held that appraisal was the exclusive remedy for a

21  shareholder who asserted claims of breach of fiduciary duty, fraud, and

22  accomplishment of a "freeze-out" merger in violation of California law.  There, the

23  plaintiff did not express his opposition to the merger, turned in his shares, was paid the

24  offered price, and then filed a damages action following the merger.  *Id.* at 1203.  The

25  plaintiff alleged that the defendants had misrepresented the public offering in the target

26  corporation's disclosure documents and that certain officers or directors received

27  substantial financial benefits from the merger not shared by other shareholders.  *Id.*

28  The Court found that the facts on which the plaintiff relied "were revealed in the proxy

Gibson, Dunn &
Crutcher LLP

1    statement sent to shareholders before the meeting at which the merger was approved."

2    *Id.* at 1207.  Thus, the Court held that "where the plaintiff was aware of all the facts

3    leading to his cause of action for alleged misconduct in connection with the terms of

4    the merger prior to the time the merger was consummated, but deliberately opted to

5    sue for damages instead of seeking appraisal, section 1312(a) acts as a bar."  *Id.* at

6    1214.  In so holding, the Court noted that the purpose of the appraisal statute is to

7    enable the majority to effect a merger while granting the minority the right to receive

8    fair cash value in the event of a disagreement.  *Id.* at 1204-05.

9           California trial courts have routinely applied Section 1312 to sustain demurrers

10   in damages actions in which shareholders attempt to sue for damages rather than

11   pursue their statutory appraisal rights.  In *Panjwani v. Blue Lane Technologies, Inc.,*

12   No. 109-CV-138285 (Santa Clara Co. Superior Ct. 2010), for example, the Superior

13   Court sustained a demurrer when shareholders sought injunctive relief and damages in

14   addition to an appraisal action.  In that case, the court held that "Plaintiffs' requested

15   remedy falls squarely within the exclusive statutory appraisal cause of action, and the

16   appraisal claim can only be made against the corporation, not individual defendants."

17   *See* Declaration of Colin B. Davis, Ex. 1.  Similarly, in *Singhania v. Uttarwar,* 136

18   Cal. App. 4th 416, 420-22, 38 Cal. Rptr. 3d 861, 863-864 (2006), the Court of Appeal

19   affirmed dismissal of a damages action for breach of fiduciary duty because plaintiffs

20   neither timely dissented nor converted their shares for merger consideration.  *See also*

21   *Dixon v. Cost Plus,* No. 12-cv-02721, 2012 WL 2499931, at *8 (N.D. Cal. June 27,

22   2012) ("Thus, plaintiffs are barred by section 1312(a) from seeking monetary damages

23   for breaches of fiduciary duty and fraud in the course of a merger"); *Barth v.*

24   *NovaSensor,* No. C-91-0830, 1991 WL 330922, at *3, 8 (N.D. Cal. Dec. 6, 1991)

25   (noting that plaintiff was unlikely to succeed in post-closing damages action when he

26   tendered shares for merger consideration rather than dissent and seek appraisal).

27          In this case, all of the requirements of Section 1312(a) are met.  Plaintiff admits

28   that he was an sTec shareholder from 2009 through the time he filed the Complaint in

1   August 2013.  Complaint ¶ 23.  He alleges that sTec entered into a merger agreement

2   pursuant to which WDC acquired all of sTec's shares for $6.85 per share.  *Id.,* ¶ 278.

3   And Plaintiff claims that, as a result of the sTec Defendants' alleged breach of

4   fiduciary duties in the negotiation and execution of the merger agreement, he was

5   "deprived of substantial value 'left on the table'" because the $6.85 per share merger

6   consideration was, in his view, "grossly inadequate" and did not, in his view,

7   appropriately value his derivative claims.  Complaint ¶¶ 279, 281.  This is precisely the

8   circumstance that Chapter 13 was designed to address.  Indeed, sTec's Proxy contains

9   multiple pages in which the Company explained in great detail Plaintiff's rights under

10  Chapter 13.  *See* RJN, Ex. C at 5, 57-58, D1-D4.  Thus, Plaintiff's breach of fiduciary

11  duties claim and requested remedies fall squarely within the exclusive statutory

12  appraisal cause of action and must be dismissed.

13
14  **C.    Plaintiff's Breach Of Fiduciary Duty Claim Is Derivative, Not Direct, And
         Plaintiff Has No Standing To Maintain A Shareholder Derivative Claim.**

15          Should this Court find that Plaintiff's breach of fiduciary duty claim is not

16  precluded by Chapter 13 of the Corporations Code, his claim still would be subject to

17  dismissal because it is derivative in nature, not direct.  As Plaintiff admits, derivative

18  claims are subject to dismissal because former shareholders, such as Plaintiff, lack

19  standing to bring or maintain a derivative claim.  *See, e.g.,* Complaint ¶¶ 263, 279 &

20  n.23; *see Grosset v. Wenaas,* 42 Cal. 4th 1100, 1119, 72 Cal. Rptr. 3d 129, 145 (2008).

21          Direct and derivative claims are mutually exclusive.  *Schuster v. Gardner,* 127

22  Cal. App. 4th 305, 312, 25 Cal. Rptr. 3d 468, 473 (2005).  "An action is derivative if

23  'the gravamen of the complaint is injury to the corporation, or to the whole body of its

24  stock or property without any severance of distribution among individual holders, or if

25  it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'

26  Shareholders may bring a derivative suit to, for example, enjoin or recover damages for

27  breaches of fiduciary duty directors and officers owe the corporation."  *Id.* at 313

28  (quoting *Jones v. H.F. Ahmanson & Co.,* 1 Cal. 3d 93, 106, 81 Cal. Rptr. 592, 598

1   (1969)).  Here, any claims outside the appraisal context would be derivative because

2   the alleged injury, *i.e.,* that sTec shareholders received an unfair price for their stock,

3   fell on all shareholders alike.  *See, e.g., Avikian v. WTC Fin. Corp.,* 98 Cal. App. 4th

4   1108, 1111, 1115-16, 120 Cal. Rptr. 2d 243, 245, 248 (2002) (when plaintiffs allege

5   that defendants mismanaged company and entered into self-serving deals culminating

6   in company's involuntary liquidation, claim is derivative because damages "were

7   merely incidental to the alleged harm inflicted upon [the company] *and all its*

8   *shareholders*") (emphasis in original); *Pan Pac. Retail Props., Inc. v. Gulf Ins. Co.,*

9   471 F.3d 961, 968 (9th Cir. 2006) (shareholder could not bring direct claim based on

10  decreased value paid for stock in merger "because such a valuation would be an injury

11  that fell on every stockholder alike"); *Pareto v. F.D.I.C.,* 139 F.3d 696, 700 (9th Cir.

12  1998) (claims that directors breached duties of care, loyalty, and candor are derivative

13  because devaluation of stock "fell on every stockholder, majority and minority alike").

14       The gravamen of Plaintiff's Complaint in this case is that the sTec Defendants

15  breached their fiduciary duties by causing sTec to enter into a transaction that was

16  "manifestly unfair" because (1) the transaction price of $6.85 per share did not

17  adequately value sTec's stock because it allegedly did not include the value of sTec's

18  claims against the Moshayedis (Complaint ¶ 279); (2) the sTec Defendants could have

19  achieved better terms but for certain alleged "side deals" that benefitted the

20  Moshayedis (*id.,* ¶¶ 270-75); (3) the merger agreement approved by sTec's board of

21  directors included "onerous and preclusive provisions" that were allegedly designed to

22  discourage competing bids (*id.,* ¶¶ 282-93); and (4) the merger agreement provides

23  certain executives with "substantial incentives," such as employment and severance

24  agreements, "that will result in their enrichment at the expense of [sTec] shareholders"

25  (*id.,* ¶ 294; *see also id.,* ¶¶ 295-96).  These allegations of corporate mismanagement

26  are classic derivative claims that belong to the Company.  *See, e.g., Pan Pacific Retail*

27  *Prop.,* 471 F.3d at 967; *Nelson v. Anderson,* 72 Cal. App. 4th 111, 125, 84 Cal. Rptr.

28  2d 753, 762 (1999); *see also* Complaint ¶ 8 (acknowledging that Plaintiff's claims in a

Gibson, Dunn &
Crutcher LLP

11

separate but related action for breach of fiduciary duties and waste of corporate assets, among other claims, belonged to sTec and could be asserted by an sTec shareholder only derivatively). And the alleged misconduct described above is exactly what Plaintiff claims was the source of his damages — *i.e.,* he contends that he is entitled to damages equal to the "intrinsic value" of the stock before the merger, including the value of sTec's unliquidated claims against the Moshayedis. *See* Complaint ¶ 279.

Now that sTec is a wholly owned subsidiary of WDC, however, Plaintiff lacks standing to bring or maintain a derivative action on behalf of sTec. *See Grosset,* 42 Cal. 4th at 1119 (holding that derivative plaintiff who ceased to be a shareholder by reason of merger loses standing to continue litigation). A derivative plaintiff loses standing "when the stockholder relationship is terminated, either voluntarily or involuntarily" because he "no longer has even an indirect interest in any recovery pursued for the corporation's benefit." *Id.* at 1115.

**D.    Plaintiff Does Not Plead Facts Sufficient To Overcome The Presumption Of The Business Judgment Rule That The Director Defendants Acted In Good Faith And With Due Care.**

**1.    The Business Judgment Rule Protects Defendants' Decision To Approve The Merger.**

The business judgment rule is a "core tenet" of corporate law "that directors of a corporation are presumed to have acted independently, with due care, in good faith and in the honest belief that [their] actions were in the stockholders' best interests." *In re Synthes, Inc. S'holder Litig.,* 50 A.3d 1022, 1033 (Del. Ch. 1994); *see Katz v. Chevron Corp.,* 22 Cal. App. 4th 1352, 1366, 27 Cal. Rptr. 2d 681, 689 (1994); *Lee v. Interinsurance Exch. of the Auto. Club of So. Cal.,* 50 Cal. App. 4th 694, 711, 715, 57 Cal. Rptr. 2d 798, 808 (1996). "The rule is based on the premise that those to whom the management of a business organization has been entrusted, and not the courts, are best able to judge whether a particular act or transaction is helpful to the conduct of the organization's affairs or expedient for attainment of its purposes." *Lee,* 50 Cal. App. 4th at 711. "[I]t is the very essence of the business judgment rule that, where a

1  reasonable business purpose is asserted, the motives of directors will not be

2  scrutinized, absent a basis for overcoming the presumption of good faith embodied by

3  the business judgment rule." *Id.* at 717.

4      "The burden is on the plaintiff challenging the corporate decision to allege facts

5  that rebut the presumption that a board's decision is entitled to the protection of the

6  business judgment rule." *Synthes,* 50 A.3d at 1033.  "The business judgment [rule] is

7  rebutted in those rare cases where the decision under attack is so far beyond the bounds

8  of reasonable judgment that it seems essentially inexplicable on any ground other than

9  bad faith." *Parnes v. Bally Entm't Corp.,* 722 A.2d 1243, 1246 (Del. 1999).  To

10  overcome this highly deferential standard, Plaintiff must plead particularized facts

11  creating a reasonable doubt about the directors' independence, disinterestedness, or

12  good faith.  *See Berg & Berg Enters., LLC v. Boyle,* 178 Cal. App. 4th 1020, 100

13  Cal. Rptr. 3d 875 (2009).

14      A board's approval of a merger is a corporate decision like any other that is

15  subject to the business judgment rule.  *Id.* at 1044-45.  California courts recognize the

16  business judgment rule's application to mergers and the deference provided to the

17  board of directors:

18      In the context of merger negotiations, "[a] 'target' corporation's decision
        to accept or resist a takeover bid . . . necessarily rests with the board of
19      directors, since it is the directors, and not the shareholders, who are best
        able to evaluate the numerous and often complex financial factors which
20      must be considered in determining whether the takeover proposal serves
        the best interests of the corporation.
21

22  *Eldridge v. Tymshare, Inc.,* 186 Cal. App. 3d 767, 776-77, 230 Cal. Rptr. 815, 820

23  (1986).

24      The essence of Plaintiff's Complaint is that sTec's board breached its fiduciary

25  duties by causing sTec to enter into a merger transaction with WDC for a price that did

26  not, according to Plaintiff, appropriately value sTec's alleged legal claims against the

27  Moshayedi brothers.  Plaintiff bases this core allegation on his contention that "the

28  value of the claims" against the Moshayedis "well exceeds the entire consideration

1  Western . . . [is] expected to pay for the entire Company; *i.e.* approximately

2  $340 million."  Complaint ¶ 1.  Indeed, the bulk of the Complaint consists of

3  allegations that the Moshayedis mismanaged sTec's business, violated the federal

4  securities laws, and engaged in "massive" insider trading.  *Id.,* ¶¶ 1, 20, 33-260.

5       Those allegations, however sensational, have little to do with whether sTec's

6  board breached its fiduciary duties in approving the merger.  Buried in an avalanche of

7  allegations concerning the Moshayedis are several key admissions that undermine

8  Plaintiff's attempt to portray sTec's board as controlled by the Moshayedis:  (1) the

9  merger was not negotiated by the Moshayedis, but instead by a Special Committee of

10 independent directors (Complaint ¶ 277; *see also* RJN, Ex. C at 25-35);[2] (2) the

11 Special Committee had full authority to review and provide an objective analysis of all

12 strategic alternatives available to the Company (Complaint ¶ 277; RJN, Ex. C at 25);

13 (3) the Special Committee retained a highly respected and independent financial

14 advisor, BAML, to assist it throughout the negotiations that led to the sale (*id.,* ¶ 311;

15 RJN, Ex. C at 25, 27); and (4) the Special Committee and BAML undertook a review

16 of the Company's strategic alternatives over a period of nearly five months that

17 ultimately resulted in the transaction with WDC at a substantial *91% premium* over the

18 previous closing price of the Company's stock (RJN, Exs. A at 1, C at 25-35).

19      Plaintiff's allegations, considered in the context of judicially noticeable facts

20 and his own admissions, hardly suggest any basis to overcome the presumption of

21 good faith and due care provided by the business judgment rule.  To the contrary, the

22 merger was insulated from any charge that the Moshayedis stood on both sides of the

23 negotiations because the board established a Special Committee consisting of

24 independent directors, with authority to review sTec's strategic alternatives, retain

25 _____

26 [2]  Plaintiff contends that the Special Committee's members "have not been publicly
   identified."  Complaint ¶ 277.  Not true.  The Proxy specifically identifies Dr. Daly,
27 and Messrs. Colpitts, Witte, and Bahri as the members of the Special Committee.
   RJN, Ex. C at 25, 27.
28

1    independent advisors, and negotiate any potential transaction.  *Id.,* Ex. C at 25; Ex. D

2    at 5.  The Special Committee retained BAML, an independent financial advisor with

3    significant expertise in technology transactions, to conduct a thorough analysis and

4    render a fairness opinion on the merger.  Complaint, ¶ 263; RJN, Ex. C at 26-27, 34.

5         Over the course of four months, the Special Committee took an active role in

6    negotiating the proposed merger.  The Special Committee met seven times, not

7    including numerous conference calls and informal meetings, and the independent

8    directors met five times.  RJN, Ex. C at 25-33.  The ultimate $6.85 per share price,

9    which represented a 91% premium over the previous closing price of sTec's stock on

10   June 21, 2013 (RJN, Ex. A), is a testament to the Special Committee's efforts.  And

11   sTec's shareholders overwhelmingly endorsed the transaction negotiated by the

12   Special Committee by a vote of 98.5% in favor to just 1.3% against.  *Id.,* Ex. B at 3.

13        Plaintiff, no doubt, will argue that the Special Committee's judgment could not

14   be trusted because, with the exception of Dr. Daly, he sued them all for breach of

15   fiduciary duty and waste in his separate shareholder derivative action entitled

16   *Sokolowski v. Moshayedi, et al.,* No. 12-cv-1862-JVS-MLG (C.D. Cal., filed Oct. 25,

17   2012).  But that argument, if made, will certainly fail.  It is well-established under

18   California law that a plaintiff must plead *specific facts* to overcome the business

19   judgment rule's presumption; "general charges of fraud, conspiracy and bad faith on

20   the part of corporate directors are insufficient in the absence of specific facts adequate

21   to show the basis for the general charges."  *Burt v. Irvine Co.,* 237 Cal. App. 2d 828,

22   84947 Cal. Rptr. 392, 405 (1965); *see also Barnes v. State Farm Mut. Auto Ins. Co.,* 16

23   Cal. App. 4th 365, 379, 20 Cal. Rptr. 2d 87, 95 (1993) (affirming order sustaining the

24   defendants' demurrer on grounds that the plaintiff "alleged no facts demonstrating

25   fraud, oppression, corruption or conflict of interest by the directors").  Plaintiff's

26   Complaint barely mentions any of the independent directors, let alone pleads specific

27   facts demonstrating that any of them (much less a majority of the board) faced a

28   substantial likelihood of liability arising from the prior derivative action.  Indeed,

1   outside the caption, the independent directors are mentioned in only seven

2   paragraphs — and none of those contain any particularized facts.  *See* Complaint ¶¶ 1,

3   2, 7, 25, 26, 54, 210.  In short, there are no facts from which an inference reasonably

4   could be drawn that the Special Committee lacked independence or effectiveness and,

5   thus, no facts to rebut the presumption provided by the business judgment rule.

6       **2.      The "Deal Protection Measures" Are All Well-Accepted Under**
7               **California Law.**

8           Plaintiff attempts to cast doubt on the board's business judgment by alleging that

9   the merger included supposed "onerous and preclusive provisions which [made]

10  approval of the [transaction] a virtual *fait accompli*."  Complaint ¶ 282.  But these

11  boilerplate allegations describe perfectly appropriate and common merger terms.

12          First, Plaintiff complains that the merger agreement contained a "prohibitive"

13  no-shop provision.  *Id.,* ¶¶ 283-86.  What Plaintiff ignores is that the complained-of

14  "no-shop" clause had a complementary "fiduciary out" provision that permitted sTec

15  to engage with other suitors, allowed the board to change its recommendation in favor

16  of the merger, and even permitted the Company to terminate the deal with WDC in

17  response to an "unsolicited bona fide written Acquisition Proposal" that the board

18  determines in good faith "constitutes or may reasonably be expected to lead to a

19  Superior Proposal."  RJN, Ex. C at A-26.  Such provisions are "standard merger terms"

20  routinely approved by courts and provide no basis for a breach of fiduciary duty claim.

21  *See, e.g., Cinerama, Inc. v. Technicolor,* 663 A.2d 1156, 1173 (Del. 1995) (holding

22  that target board's negotiation of a fiduciary out clause in a merger agreement

23  "successfully preserved the right to provide information to, and engage in discussions

24  with, competing bidders"); *In re 3Com S'holders Litig.,* No. 5067-CC, 2009 WL

25  5173804, at *7 & n.36 (Del. Ch. Dec. 18, 2009) (noting that courts have "repeatedly

26  held" that non-solicitation provisions "are standard merger terms, are not *per se*

27  unreasonable, and do not alone constitute breaches of fiduciary duty").

28          Second, Plaintiff contends that the "matching right" provided to WDC in the

1   event that sTec were to receive a Superior Proposal cannot be a legitimate exercise of

2   business judgment.  Complaint ¶¶ 287-88.  According to Plaintiff, matching rights

3   "dissuade[] interested parties from making an offer for the Company by providing

4   [WDC] the opportunity to make repeated matching bids to counter any competing

5   offers."  *Id.,* ¶ 288.[3]  But matching rights, like no-shop/fiduciary out provisions, is a

6   "standard merger term[]."  *In re 3Com,* 2009 WL 5173804, at *7 & n.36.

7            Third, Plaintiff complains that the merger agreement contains "an onerous

8   termination fee of $9.4 million in the event the Company were to accept a superior

9   offer from another bidder."  Complaint ¶ 289.  But the termination fee represented only

10   2.9% of the total transaction price — a figure well within the range routinely approved

11   by courts as within a board's legitimate business judgment.  *See, e.g., In re Dollar*

12   *Thrifty S'holder Litig.,* 14 A.3d 573, 618 (Del. Ch. 2010) (denying plaintiffs' request

13   for preliminary injunction despite plaintiff's challenge to 3.5% termination fee); *In re*

14   *3Com,* 2009 WL 5173804, at *7 & n.36 (upholding 4% termination fee).

15            Finally, Plaintiff suggests that the board is not entitled to the protection of the

16   business judgment rule because certain major shareholders entered into voting

17   agreements "that irrevocably bind[] the Company's largest shareholders, who

18   collectively own approximately 12% of the Company's shares, to vote in favor" of the

19   merger.  Complaint ¶ 290.  Once again, Plaintiff complains of a provision that is

20   commonplace in corporate mergers and acquisitions transactions and certainly suggests

21   no basis to overcome the presumption provided by the business judgment rule.  *See,*

22   *e.g., In re Synthes, Inc. S'holders Litig.,* 50 A.3d at 1049 (refusing to find unreasonable

23   voting rights agreement locking up 37% of voting stock).[4]

24   ───────────────

[3]   That this allegation is nothing more than boilerplate is evidenced by the fact that,
25      when Plaintiff's counsel cut-and-pasted the allegation from another complaint,
26      counsel forgot to replace "Unilever" with "Western Digital."  *See* Complaint ¶ 288.

27   [4]   Plaintiff also suggests that "don't ask, don't waive" provisions included in non-
         disclosure agreements entered into with some potential bidders precluded a topping
28      bid.  *See* Complaint ¶ 266.  As disclosed in sTec's September 3, 2013 Form 8-K,

                                                                    *(Cont'd on next page)*

Whether these provisions are examined individually or, as Plaintiff alternatively suggests, "cumulatively" on the grounds that the "deal protection" measures "were all designed to effectively discourage bidders from making a competing bid," Plaintiff's allegations fail to suggest any breach of fiduciary duty.  The court in *Synthes* addressed a similar set of deal protections — a voting rights agreement locking up 37% of the outstanding stock, a no-shop/fiduciary out provision, a matching rights provision, and a termination fee valued at approximately 3.5% of the equity value — and found nothing at all improper.  The court explained:

> This court should be particularly reluctant to deem unreasonable a board's decision to use deal protections as part of the negotiating strategy to pull the best bid from the final bidder or bidders who emerge from an open process on the theory that some party that has already had a chance to make a real bid without having to hurdle any deal protection barrier at all will somehow come to a different realization of the company's value, or that some unexpected bidder will emerge from an unexplored and overlooked dusty corner of our well-scoured capital markets. That sort of tactical judgment is freighted with none of the concerns about disloyalty that animate *Unocal* and *Revlon,* and is one that courts are ill-equipped to second guess as unreasonable.

*Id.* at 1049 (citing *Unocal Corp. v. Mesa Petroleum Co.,* 493 A.2d 946 (Del. 1985), and *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* 506 A.2d 173, 180 (Del. 1986)).

The same logic applies here.  The Special Committee, through BAML, contacted 18 prospective purchasers, including 17 technology companies and one financial buyer.  *Id.* at 27.  This is the same kind of open process the Court of Chancery addressed in *Synthes* and the same deference to the board's business judgment regarding terms of the merger agreement should apply.

## E.   Plaintiff Fails To Satisfy The Heavy Burden Of Pleading A Materially False Or Misleading Proxy Statement.

Plaintiffs seeking to pursue a disclosure claim bear the two-fold burden of

_____

*(Cont'd from previous page)*

however, "none of the non-disclosure agreements contains a standstill provision that continues in effect after entry into the merger agreement."  RJN, Ex. D at 6.

1   demonstrating that (1) the claimed misrepresentations and/or omissions were material

2   and (2) they were in fact false.  *See, e.g., In re Answers Corp. S'holders Litig.,*

3   No. 6170-VCN, 2011 WL 1366780, at *5 (Del. Ch. Apr. 11, 2011).  To show

4   materiality, Plaintiff "must demonstrate a substantial likelihood that the disclosure of

5   the omitted fact would have been viewed by the reasonable investor as having

6   significantly altered the total mix of information available."  *Id.*

7        But "a duty to disclose is not a mandate for prolixity," nor does it require that a

8   corporation "bury the shareholders in an avalanche of trivial information."  *In re*

9   *Micromet, Inc. S'holders Litig.,* No. 7197-VCP, 2012 WL 681785, at *11 (Del. Ch.

10  Feb. 29, 2012); *see also Answers,* 2011 WL 1366780, at *5.  Such disclosure "is hardly

11  conducive to informed decision making."  *Micromet,* 2012 WL 681785, at *11

12  (internal quotations omitted).  Thus, courts have held that "a reasonable line has to be

13  drawn or else disclosures in proxy solicitations will become so detailed and

14  voluminous that they will no longer serve their purpose."  *In re Delphi Fin. Group*

15  *S'holder Litig.,* No. 7144-VCG, 2012 WL 729232, at *18 (Del. Ch. Mar. 6, 2012).  "So

16  long as the proxy statement, viewed in its entirety, sufficiently discloses and explains

17  the matter to be voted on, the omission or inclusion of a particular fact is generally left

18  to management's business judgment."  *Micromet,* 2012 WL 681785, at *10.  For the

19  reasons discussed below, Plaintiff's disclosure claims are without merit.

20        **1.    The Proxy Statement Fully Disclosed The Claims Previously**
21             **Asserted Derivatively On Behalf Of sTec And By The SEC.**

22        Plaintiff claims that "[t]he most fundamental flaw with the Proxy [was] the

23  failure to provide any discussion of the claims possessed by [sTec] directly and/or

24  derivatively, and against, *inter alia,* certain of its present and former officers and/or

25  directors, arising from events of 2008-2009 such as those alleged in *Sokolowski I,*"

26  Plaintiff's prior derivative action against certain of sTec's officers and directors.

27  Plaintiff is simply wrong.  The Proxy contains seven pages of detailed disclosures

28  relating to the "Interests of sTec's Executive Officers and Directors in the Merger,"

including the following description of *Sokolowski I* and the other derivative cases:

> ***Derivative Actions.*** As disclosed in sTec's Quarterly Report on Form 10-Q for the quarter ended June 30, 2013, shareholder derivative actions purportedly filed on sTec's behalf against several of our senior officers and directors are pending in the Superior Court of California for Orange County and the United States District Court for the Central District of California. The derivative actions have been stayed by the respective courts. Upon consummation of the merger, the plaintiffs asserting these derivative claims may lose standing because they will no longer be shareholders of sTec. However, consummation of the merger would not affect sTec's right to assert any claims we may possess if sTec chooses to do so.

RJN, Ex. C at 56. The Form 10-Q, in turn, contained detailed descriptions of the claims and procedural history of each direct and derivative action then pending against or on behalf of sTec. *Id.,* Ex. F at 10-12. The market was thus aware of the claims and the investors' assessment of them was incorporated in the market price of sTec's stock well before the merger.

Even beyond this detailed disclosure, on September 3, 2013, sTec published in a Current Report on Form 8-K a detailed update of all of the litigations at issue. That disclosure included the following description of the allegations Plaintiff has made in this case:

> On August 13, 2013, another shareholder filed a new purported class action lawsuit, *Sokolowski v. Western Digital Corp. et al*, Case No. 8-13cv1277, in the United States District Court for the Central District of California, against the Company, members of its board of directors, WDC and Merger Sub challenging the proposed Merger. . . . Among other things, the complaint alleges that the directors breached their fiduciary duties because the proposed Merger does not maximize shareholder value, that the Definitive Proxy Statement fails to provide shareholders with material information and/or provides them with materially misleading information, that the proposed Merger undervalues the Company because it fails to account for the value of the pending purported shareholder derivative claims described more fully below and in the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2013, and that the Merger is intended to extinguish those allegedly valuable claims.

RJN, Ex. D at 2. In addition, sTec specifically disclosed that the board had considered the potential value of Plaintiff's derivative claims when evaluating the merger:

[I]n approving the Merger Agreement . . . , the Company's board of directors was aware of and considered interests that the Company's executive officers and directors have in the Merger that may be different from, or in addition to, the interests of the Company's shareholders generally, including the pending shareholder derivative actions purportedly filed on the Company's behalf against several of the Company's senior officers and directors and that upon consummation of the Merger, the plaintiffs asserting these derivative claims may lose standing because they will no longer be shareholders of sTec.  Consistent with the prior evaluation by the independent members of the Company's board of directors of a number of factors, including the legal and factual merits of the claims, and their determination that it would not be in the Company's best interests to pursue these claims, ***the board of directors did not place any material value on these claims in evaluating the Merger***.

*Id.,* Ex. D at 3 (emphasis added).

Although Plaintiff alleges that the Proxy "should have contained a detailed assessment of the value of the claims" (Complaint ¶ 299), it is beyond dispute based on the facts alleged in the Complaint and the judicially noticeable facts that sTec's shareholders were advised of the claims that had been asserted, the status of each of the cases, and that sTec's board "did not place any material value" on those claims when assessing the merger consideration.  This is all the information shareholders needed to know.  If any shareholder disagreed with the board's assessment, as Plaintiff did, he or she was free to vote against the WDC transaction and/or seek higher consideration through an appraisal of his or her stock.

### 2.    The Proxy Statement Fully Disclosed The Interests Of sTec's Executive Officers And Directors In The Merger.

Plaintiff next complains that sTec's Proxy "nowhere disclosed . . . the special benefits [sTec and Western] hoped would accrue to the Moshayedis and no other STEC shareholders."  Complaint ¶ 278.  But just five paragraphs before, in paragraph 273, Plaintiff alleged that "Defendant Manouchehr [Moshayedi] received two major side-deals from Western in order to close the deal *as reflected in Exhibit 99.5 of [sTec]'s Form 8-K filed with the SEC on June 25, 2013." Compare* Complaint ¶ 278 *with id.,* ¶ 273 (emphasis added).  And, indeed, as paragraph 273 suggests, the Proxy

contained numerous detailed disclosures regarding "Interests of sTec's Executive

Officers and Directors in the Merger," including:

- severance and change of control payments to executive officers (RJN, Ex. C at 9, 52-54);

- accelerated vesting of all unvested and unexercised stock options and restricted stock units in the event an executive was terminated following a change of control (*id.*, Ex. C at 9, 53);

- continuation of certain executives' indemnification rights, including WDC's obligation to continue to advance costs of defense to Manouchehr Moshayedi (*id.*, Ex. C at 9, 55);

- voting agreements that obligated sTec's executives, owning collectively 12.37% of sTec's voting stock, to vote their stock in favor of the merger (*id.*, Ex. C at 55); and

- an agreement executed by Manouchehr Moshayedi to release and covenant not to sue WDC (*id.*, Ex. C at 10, 55).[5]

Although Plaintiff suggests that sTec's disclosures relating to these agreements are

somehow inadequate, he never specifies precisely what additional information should

have been, but was not, disclosed.  Accordingly, any claim predicated on these

allegations must be dismissed.

### 3.    Plaintiff's Quibbles With BAML's Valuation Methodologies Cannot Give Rise To A Disclosure Claim.

Plaintiff alleges that the Proxy failed to disclose adequately certain aspects of

the methodology BAML used to evaluate the fairness of the merger price.  More

specifically, Plaintiff alleges that the financial disclosures in the Proxy were deficient

because "the Proxy fails to disclose the underlying methodologies, projections, key

inputs, and multiples relied upon and observed" by BAML.  *See* Complaint ¶¶ 302-07.

---

[5]  Concurrently with the execution of the merger agreement, Manouchehr Moshayedi entered into a release and covenant not to sue *in favor of WDC*.  The Proxy fully disclosed the terms of the release and covenant not to sue, pursuant to which Mr. Moshayedi agreed to cap sTec's aggregate obligation under California law and Mr. Moshayedi's existing agreements with the Company.  RJN, Ex. C at 55-56.

To start, the claim makes no sense as a factual matter.  The Proxy included an 11-page description of BAML's analyses.  The methodologies employed by BAML — a selected publicly traded companies analysis, selected precedent transactions analysis, discounted cash flow analysis, and review and analysis of sTec's historical trading prices and volumes — were all described in great detail.  *See* RJN, Ex. C at 41-44. Likewise, the financial projections supplied by management and relied upon by BAML are disclosed, again in great detail, under the heading "**Certain Financial Projections.**"  *See id.,* Ex. C at 45-49 (noting that management prepared two alternative sets of projections, "Operating Projections" and "Cost-Reduction Projections," and that BAML used the "Cost-Reduction Projections" for purposes of its analysis).  Plaintiff attempts to frame the matter as a failure to disclose, but in reality he simply disagrees with the methodologies BAML employed to reach its fairness opinion.  *See* Complaint ¶¶ 304-09.

More importantly, this is not actionable conduct, even if true.  As the Delaware Court of Chancery explained, "[T]here are limitless opportunities for disagreement on the appropriate valuation methodologies to employ, as well as the appropriate inputs to deploy within those methodologies.  Considering this reality, quibbles with a financial advisor's work simply cannot be the basis of a disclosure claim."  *In re Atheros Commc'ns, Inc.,* No. 6124-VCN, 2011 WL 864928, at *10 (Del. Ch. Mar. 4, 2011); *see In re Best Lock Corp. S'holder Litig.,* 845 A.2d 1057, 1073 (Del. Ch. 2001) ("Delaware courts have held repeatedly that a board need not disclose specific details of the analysis underlying a financial advisor's opinion").  Indeed, "[i]f shareholders believe the financial advisor undervalued the company after reading a summary of its work, they are free to exercise their appraisal rights."  *3Com,* 2009 WL 5173804, at *6.

Plaintiff also alleges that the Proxy should have, but did not, disclose the Special Committee's "basis for retaining [BAML]," the amount paid for BAML's services, and the extent to which such compensation was contingent upon consummation of the merger.  Complaint ¶ 311.  Again, all of the information Plaintiff claims to have been

withheld was, in fact, disclosed in sTec's Proxy.  The Proxy discloses that:

- "the directors discussed a number of factors to be considered in any potential engagement of an investment banking firm, including a potential lack of interest of larger advisors in light of the size of sTec, potential conflicts, and the complexities arising from having activist participation in sTec's common stock" (RJN, Ex. C at 25-26);

- the Special Committee directed management to discuss a potential engagement with nine investment banking firms identified by the board, including BAML, to gauge interest in representing sTec and evaluate the proposed deal teams (*id.,* Ex. C at 26);

- "sTec selected [BAML] . . . on the basis of [its] experience in transactions similar to the merger, and its reputation in the investment community" (*id.,* Ex. C at 38); and

- "sTec has agreed to pay [BAML] for its services in connection with the merger an aggregate fee of approximately $4.3 million, $250,000 of which was payable in connection with its [fairness] opinion and the remainder of which is contingent upon the completion of the merger" (*id.,* Ex. C at 44).

Thus, every piece of information Plaintiff contends to be missing from the Proxy relating to BAML was, in fact, disclosed.

### 4.     There Was No Duty To Disclose Potential "Strategic Alternatives," But The Proxy Statement Did Disclose Them.

Plaintiff alleges that the Proxy should have, but did not, include "[a] discussion of all of the strategic alternatives discussed by the Board" from 2012 through conclusion of negotiations with WDC.  Complaint ¶¶ 310(a), (d), (g), (k).  This claim fails as a matter of law and fact.

*First,* sTec had no legal obligation to disclose every option the Special Committee considered and rejected.  *See, e.g., 3Com,* 2009 WL 5173804, at *6 ("Delaware law does not require management to discuss the panoply of possible alternatives to the course of action it is proposing[, which] is consistent with the principle that too much information can be as misleading as too little").

*Second,* notwithstanding the lack of a duty to disclose, the Proxy *did* disclose this information.  The Proxy reported that (a) in November 2012, the board discussed "potential strategic alternatives in response to the company's financial performance,

1   including the potential for both acquisitions and divestitures in several areas relevant to

2   the company's strategy" (RJN, Ex. C at 25); (b) in February 2012 the board formed the

3   Special Committee to, among other things, "conduct a review of sTec's strategic

4   alternatives, including a possible sale of the company, as well as the alternative of

5   continuing as a standalone company with further reductions in our workforce and other

6   cost reduction initiatives" (*id.*); (c) in March the board "discussed the company's

7   business and its strategic alternatives, including the company's standalone business

8   plans, and considerations related to the potential engagement of a financial advisor"

9   (*id.* at 26); and (d) in June 2013, the Special Committee "discussed sTec's outlook for

10   the second and third quarters and over the next 12 to 24 months, including the timing

11   and impact of sTec's proposed cost reductions on the go-forward operations of the

12   company," discussed the WDC offer, and then continued to discuss alternatives to the

13   WDC offer, "including the benefits and risks of such alternatives" (*id.* at 32-33).

14   These disclosures are more than sufficient.

## IV.   CONCLUSION

16      For the foregoing reasons, the sTec Defendants respectfully request that the

17   Court dismiss Plaintiff's Complaint with prejudice and without leave to amend.

18   Dated:  November 5, 2013

19                                     MERYL L. YOUNG
20                                     PAUL J. COLLINS
                                       COLIN B. DAVIS
21                                     GIBSON, DUNN & CRUTCHER LLP

22

23                                     By:  /s/ Meryl L. Young
                                              Meryl L. Young
24
                                       Attorneys for Defendants KEVIN C. DALY,
25                                     MANOUCHEHR MOSHAYEDI, MEHRDAD
                                       MOSHAYEDI, RAJAT BAHRI, F. MICHAEL
26                                     BALL, MATTHEW WITTE, CHRISTOPHER
                                       COLPITTS, and sTEC, INC.
27

28

Gibson, Dunn &
Crutcher LLP